No. 28,258.

WARD L. REED, a Minor, by J. L. CRAFT, His Mother and Next Friend, *Appellee*, v. THE KANSAS POSTAL TELEGRAPH AND CABLE COMPANY, *Appellant*.

(264 Pac. 1065.)

### SYLLABUS BY THE COURT.

COMPROMISE AND SETTLEMENT—*Consideration—Forbearance to Sue.*  Where one in good faith asserts a claim not obviously invalid, worthless or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed March 10, 1928. Affirmed.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson*, all of Wichita, for the appellant.

*E. P. Villepigue* and *Carl H. Davis*, both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The Postal Telegraph and Cable Company, defendant in this action, appeals from the decision of the trial court overruling its demurrer to the amended petition of the plaintiff.

A seventeen-year-old boy, by his mother as next friend, brought this action to recover damages for physical injuries received by him while delivering, or attempting to deliver, a telegraph message for the defendant company, by colliding on his motorcycle with a Dodge truck on one of the streets of Wichita. The amended petition, after stating the employment and the facts of the accident and injury sustained and that the defendant company was operating at the time of the accident and injury under the provisions of the workmen's compensation act, alleges that the defendant company upon learning of the injury removed the plaintiff to the hospital, where he received medical attention and care of the company's physician; that while he was still in the hospital the general manager of the company told him the company was operating under the provisions of the workmen's compensation act, and would pay compensation to him for the injuries sustained in accordance with its terms and provisions, which the plaintiff then and there agreed to accept; that

Compromise and Settlement, 12 C. J. p. 324 n. 22; 25 L. R. A. n. s. 275; 5 R. C. L. 190.  Contracts, 13 C. J. pp. 346 n. 70, 347 n. 76.

after leaving the hospital plaintiff made numerous requests and demands for such compensation, but the company neglected and failed to pay him anything whatever; that he then had his attorney write the company that if he was not paid an action for damages would be commenced; that following such notice the company called him to its office, and, as an inducement for him to refrain from commencing such action for damages, agreed to make the workmen's compensation act a basis on which his compensation for the injury should be paid, computed the amount on such basis up to that time, and paid it to him in the sum of $109, and paid the doctor and hospital bills on the same basis, to all of which the plaintiff agreed; that since that time the company has failed, neglected and refused to pay any further installments; that plaintiff was earning at the time of the injury $75 per month; that since leaving the hospital his injury is and has been such as to entitle him under the compensation act to compensation for permanent partial disability in the minimum sum of $6 per week, which disability is the direct and proximate result of the injury; and that he has served the usual request and notice for arbitration required by law before commencing this action, which have not been acknowledged or recognized by the defendant company.

The appellant insists that there was no possible claim for damages or liability of the defendant for damages at common law, and therefore there was nothing to compromise; in other words, that the alleged agreement lacked consideration and could not stand, and that to refrain from commencing an action where no common-law liability existed would not support a compromise contract. Appellant refers to the case of *Price v. Bank,* 62 Kan. 743, 64 Pac. 639, where there was an agreement to forbear issuance of execution on a judgment that had been extinguished, and the court held:

"An agreement to forbear and forbearance from issuing execution on a judgment, which clearly has no legal existence and on which no execution could lawfully issue, are not sufficient consideration for a new promise on the part of a supposed judgment debtor." (Syl. ¶ 1.)

Appellant also distinguishes between this case and the case of *Fuller v. Wright Bros.,* 106 Kan. 676, 189 Pac. 142, which is undoubtedly the one followed by plaintiff in preparing and presenting this case, calling attention to the difference in the facts upon which common-law liability might be based. In that case, while the plaintiff was standing on an auto truck for the purpose of loading the same with garbage, refuse and ashes, the truck was by the driver

thereof suddenly and without warning to plaintiff started up with a violent jerk, causing plaintiff to be violently thrown to the ground and seriously injuring him. It is true in that case there was no serious contention that there might be a common-law liability, while in the case at bar that is the principal contention. The syllabus in that case is as follows:

"Where a workman was injured in the service of his employers under such circumstances as to give him reasonable grounds for a cause of action for damages at common law against his employers, or to base a claim against them under the workmen's compensation act if their business was conducted under that act, and his employers in good faith believed that they were conducting their business under the provisions of that act, and had purchased and paid for indemnity insurance pursuant to that belief, although they had not formally filed their election with the secretary of state until after the workman had been injured, it was not against public policy for the workman and his employers to agree that he should waive his right to sue for damages at common law, and to claim compensation under the act in lieu thereof; and the mutual agreement of the workman and his employers that the terms of the compensation act should be used as the basis for determining the respective rights and liabilities of the parties, and to measure the compensation, if any, for the plaintiff's injuries, was a valid, contractual engagement which the court should enforce according to its terms."

Appellant also cites *Udey v. City of Winfield,* 97 Kan. 279, 155 Pac. 43, and *Carter v. Uhrich,* 122 Kan. 408, 252 Pac. 240, to support the contention that there was in fact no original liability in this case and therefore nothing to compromise. Williston on Contracts, and other authorities are also cited to show that such was at one time the rigid rule, both in England and this country; but those same authorities in succeeding paragraphs show a subsequent modification of such rule. Section 135 of 1 Williston on Contracts, continuing, states:

"In the early part of the nineteenth century an advance was made from the position of the earlier authorities, and it was held that forbearance to prosecute a suit which had been already instituted was sufficient consideration without inquiring whether the suit would have been successful or not. . . . And probably at the present time every court would admit this to be true, and hold further that forbearance or a promise to forbear suit upon a doubtful claim is sufficient consideration whether suit has or has not previously begun."

Elliott on Contracts, volume 1, page 407, on the same subject gives the rule as follows:

"While it is definitely settled that a promise to refrain from resorting to legal means to enforce a valid obligation may furnish a sufficient consideration for a promise, yet if the claim threatened to be enforced is invalid and worth-

less, a promise not to attempt to enforce or to refrain from making trouble concerning it is not a consideration recognized by the law as valuable. This doctrine was originally given a rigorous application, but it has been very materially modified by subsequent cases, and it is now held that it is not necessary in a suit on a promise given in consideration of a forbearance from suit that it should appear that there was a good cause of action or a fair and reasonable ground of success in the threatened suit. Forbearance to sue on a claim known to be frivolous and vexatious is not a sufficient consideration, for the reason that the promotion of such suit would be or could be found to be either fraudulent or wanting in good faith, but, short of that, forbearance to sue is a good consideration for a promise founded thereon. It is only essential that the claim be doubtful either in law or equity and asserted in good faith."

The same rule is stated in 13 C. J. 346, 347:

"The principle followed in perhaps the majority of cases is that one has a right to sue where his claim is reasonably doubtful, and that forbearance to enforce a claim which might reasonably be thought doubtful is a sufficient consideration, on the ground that 'the reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concessions.' . . . A third view is that one has a right to sue when he believes that he has a good cause of action, that it is enough if the plaintiff can show that at defendant's request he forebore to prosecute a claim which he believed to be well founded, and that it is no answer to show that the claim was not well founded or was not even reasonably doubtful." (See, also, 6 R. C. L. 659.)

Our own state has adopted this modified view of the original rule to the effect that it is not now a hard and fast rule as to whether or not an actual liability exists, but holds there is a good consideration for forbearance to sue if the claim is reasonably doubtful and pursued in good faith.

"A promise to do an act which one is not otherwise legally bound to perform is a sufficient consideration for a contract to forbear action, notwithstanding the act is one apparently more to the interest of the promisor than of the promisee, and notwithstanding it may be difficult to ascribe a motive to the latter for wishing it done." (*Dendy v. Russell,* 67 Kan. 721, syl., 74 Pac. 248.)

In the case of *Grunder v. Yeager,* 106 Kan. 818, 189 Pac. 922, which was a suit for breach of an oral contract to sell and deliver a Delco lighting plant, the court in the opinion said:

"It is argued that the agreement did not constitute a sale. Very true, but it did constitute a contract to sell, which is quite as sacred and binding as any other contract. But it is said there was no consideration—hence no damages.

This will not do. Each promise was a sufficient consideration for the other, and no payment was required to make it obligatory."

The question of consideration for compromise is dismissed in another decision in the same volume as follows:

"While compromises and settlements, like other contracts, must be supported by a consideration, it is enough to support the agreement that there was a doubtful question, and where the parties to a compromise act in good faith, and one agrees to pay and the other to accept a certain sum in satisfaction of his liability upon a claim, there is sufficient consideration for the compromise." (*Shrader v. McDaniel,* 106 Kan. 755, syl. ¶ 4, 189 Pac. 954.)

We conclude that there could easily exist in the mind of the seventeen-year-old injured boy a reasonable doubt as to the question of the common-law liability of the defendant company when he, through his attorney, threatened to commence an action against the defendant for common-law liability for the injuries sustained, and when he was requested by the manager of the company to refrain from and forbear bringing such action, and promised if he would do so the settlement would be made according to the terms and provisions of the workmen's compensation act, and then and there computed the damages according to such act to that date and gave him a check for it, and promised to pay the bills of the doctor and hospital. Unless there is something to point out or indicate the opposite, good faith and honesty of purpose are to be presumed. The natural and most rational conclusion from the language of the amended petition is that the plaintiff had an honest and reasonable belief in the possible validity of his claim and was prosecuting it under his attorney's supervision in good faith.

In the case of *Carter v. Uhrich,* supra, both parties acted for a time as if they were under the compensation act. Later, the injured party brought an action for civil damages, and the court held "it would be harsh indeed to say that plaintiff was estopped to pursue this action on such account." Very different from the present action and not an exact converse of it. We think the amended petition sets out a good and sufficient consideration for the promise of the defendant and that the trial court very properly overruled the demurrer of the defendant to the amended petition.

The judgment is affirmed.