Margaret R. SHEHAB, Appellant,

v.

XANADU, INC., Liberty Financial Corporation and Wayne Avis, Appellees.

No. 13-85-308-CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 17, 1985.

**492**

Dan Carabin, San Antonio, for appellant.

Michael A. Chovanec, John M. Pinckney, III, Judith R. Blakeway, San Antonio, for appellees.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Margaret R. Shehab brought suit against Xanadu, Inc., Liberty Financial Corp., and Wayne Avis, seeking payment of commissions she claimed were due her from the sale of fifty or more units in a condominium project. The defendants moved for summary judgment, relying on a single point of law: that appellant was unable to recover commissions from the sale of real estate because she had failed to comply with the Real Estate License Act.[1] We affirm.

In two points of error, appellant contends the trial court erred in granting summary judgment because she is exempted from the requirements of that Act by § 3(g), which states:

Sec. 3. The provisions of this Act shall not apply to any of the following persons and transactions, and each and all of the following persons and transactions are

hereby exempted from the provisions of this Act, to wit:

\* \* \* \* \* \*

(g) *an on-site manager of an apartment complex;*

For the purposes of this appeal, we view the evidence in the light most favorable to appellant, accepting as true those facts which support nonmovant's position, and making every reasonable inference in nonmovant's favor, to determine whether the evidence establishes as a matter of law that movant is entitled to judgment on the grounds set forth in its motion. *Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589 (Tex.1975); *Jorgensen v. Stuart Place Water Supply Corp.,* 676 S.W.2d 191 (Tex.App.—Corpus Christi 1984, no writ); *Major Investments, Inc. v. De Castillo,* 673 S.W.2d 276 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

Appellant alleged she had worked as a licensed real estate agent in the state of Michigan for Products, Inc., which subsequently became appellee Liberty Financial Corporation ("Liberty"). On the representation of S.L. McNiece, president of Products, Inc. ("Products"), that she did not need a Texas real estate license, appellant agreed to relocate to San Antonio, Texas, and to become Sales Manager of Lafayette Place, an apartment house which was being converted into condominiums. A letter agreement was ultimately given to appellant by Products, confirming that she was to act as Sales Manager and receive as her compensation 1% of the sales price of each unit sold by her. Appellant was provided with a rent-free apartment at Lafayette Place and was "on call" twenty-four hours a day to show units to prospective buyers. During the period of 1978 through 1981, she successfully sold and received commissions on over 140 units. Sometime in the latter half of 1980, appellant introduced to Xanadu, Inc., one Williston H. Clover. Clover had expressed an interest in purchasing the remaining available units at Lafayette Place. Negotiations were entered into be-

1. TEX.R.CIV.STAT.ANN. art. 6573a.

tween Clover and S.L. McNiece, Warren Avis, and Wayne Avis on behalf of Liberty, which resulted in a sale. Sometime during the sale negotiations, the proposed sale was restructured as a sale of all the stock of Xanadu, Inc., from Liberty to Clover. Included in the assets of Xanadu were the remaining unsold units of Lafayette Place, numbering about 54, on which appellant claims a commission.

Appellant asserts a cause of action for contractual commission, due from her efforts in bringing about the sale of the units in question to Clover, and a cause of action for fraud, first, in representations by McNiece that she needed no real estate license for her position in Texas, and, second, in deliberately restructuring the sale to Clover as a sale of stock so as to deprive her of some $51,583.40 in commissions.

The Real Estate License Act, TEX.REV. CIV.STAT.ANN. art. 6573a, § 20(a) (Vernon Supp.1985), provides:

> Sec. 20. (a) A person may not bring or maintain an action for the collection of compensation for the performance in this state of an act set forth in Section 2 of this Act without alleging and proving that the person performing the brokerage services was a duly licensed real estate broker or salesman at the time the alleged services were commenced, or was a duly licensed attorney at law in this state or in any other state.

A real estate broker is defined by the Act as follows:

> Sec. 2. As used in this Act:
>
> \* \* \* \* \* \*
>
> (2) "Real estate broker" means a person who, for another person and for a fee, commission, or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commis-

sion, or other valuable consideration from another person:

> \* \* \* \* \* \*
>
> (C) negotiates or attempts to negotiate the listing, sale, exchange, purchase, rental, or leasing of real estate;
>
> \* \* \* \* \* \*
>
> (I) procures or assists in the procuring of prospects for the purpose of effecting the sale, exchange, lease, or rental of real estate;
>
> \* \* \* \* \* \*

Appellant concedes that she did not have a valid Texas real estate license at any time relevant to this suit; however, she contends that summary judgment was improper because she was exempted from the license requirement by § 3(g) of the Act because she was "an on-site manager" of a condominium complex and that a manager of a condominium complex is one and the same as a manager of an apartment complex.

■ The real estate license act is a general law which applies to all persons who engage in the real estate business. TEX. REV.CIV.STAT.ANN. art. 6573a, § 1(b) (Vernon Supp.1985)[2]; *Henry S. Miller Co. v. Treo Enterprises,* 585 S.W.2d 674, 676 (Tex.1979); *Macphee v. Kinder,* 523 S.W.2d 509, 511 (Tex.Civ.App.—San Antonio 1975, no writ). The legislative intent is to avoid fraud on the public by requiring a license of anyone who deals in real estate and expects a commission. *Henry S. Miller Co.,* 585 S.W.2d at 676; *Avent v. Stinnett,* 513 S.W.2d 89, 93 (Tex.Civ.App.—Amarillo 1974, no writ). As an exception to this general scheme and purpose, § 3(g) (the list of exceptions) must be strictly construed. *Tyson v. Britton,* 6 Tex. 222, 224 (1851); *Gulf States Utilities Company v. State,* 46 S.W.2d 1018, 1026 (Tex.Civ.App. —Austin 1932, writ ref'd). *Cf. Young v.*

---

2. Section 1.

(b) It is unlawful for a person to act in the capacity of, engage in the business of, or advertise or hold himself out as engaging in or conducting the business of a real estate broker or a real estate salesman within this state without first obtaining a real estate license

from the Texas Real Estate Commission. It is unlawful for a person licensed as a real estate salesman to act or attempt to act as a real estate agent unless he is, at such time, associated with a licensed Texas real estate broker and acting for the licensed real estate broker.

*Del Mar Homes, Inc.,* 608 S.W.2d 804, 807 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). *See generally,* 53 TEX. JUR.2d *Statutes* § 201 (1964).

Numerous courts have held that strict compliance with the terms of the Act is an unalterable prerequisite to a suit to recover commissions on real estate sales. This means that a litigant must not only have a valid Texas real estate license, but he or she must also allege and prove that fact. *Henry S. Miller Co., supra; Hall v. Hard,* 160 Tex. 565, 335 S.W.2d 584, 589 (1960); *Raybourn v. Lewis,* 567 S.W.2d 908, 911 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Elrod v. Becker,* 537 S.W.2d 84, 86 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *Macphee v. Kinder,* 523 S.W.2d 509, 512 (Tex.Civ.App.—San Antonio 1975, no writ).

■ Appellant, on the other hand, contends that the plain meaning of § 3(g) places her within the exception, since she resided at Lafayette Place, acted as a manager, and since Lafayette Place was "an apartment complex" originally. We disagree. Even assuming that appellant was "an on-site manager," we do not think that the legislature intended "apartment complex" to include "condominium project." Condominium Act, ch. 191, § 2(c), 1963, Tex.Gen. Laws, Local and Spec. 507, *repealed by* Act of 1983, ch. 576, Title 81, Tex.Gen. Laws 3475. Condominiums are a form of real property. *Dutcher v. Owens,* 647 S.W.2d 948, 949 (Tex.1983). To read the exemptions [§ 3(g)] so as to allow unlicensed persons to sell condominiums simply because they happen to reside in a managerial capacity at the project would frustrate the clearly stated purpose of the Act.

Appellant, in her brief, states that the evil of the act is its use by certain parties to take advantage of their employees. We agree that this can happen, and, indeed, it appears to have happened here. Nevertheless, in light of the restrictive reading that we must give the Act, we think that the exemption for "an on-site manager of an apartment complex" in § 3(g) was not in-

tended to apply to an on-site sales manager of a condominium project such as appellant.

■ The existence of a contract requiring appellees to pay appellant commissions does not alter the statutory bar to recovery through use of the courts. 53 TEX. JUR.2d, *Statutes,* at § 201. *See Hall v. Hard,* 335 S.W.2d at 589; *Henry S. Miller Co.,* 585 S.W.2d at 676. Neither is appellant able to recover by alleging fraud. *Breeding v. Anderson,* 152 Tex. 92, 254 S.W.2d 377, 380–81 (1953); *Macphee v. Kinder,* 523 S.W.2d at 512.

We hold that the trial court correctly ruled that appellees are entitled to summary judgment as a matter of law. Accordingly, the judgment of the trial court is AFFIRMED.